UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States Securities and Exchange Commission, | Civ. No. 19-918 (PAM/ECW) |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| Jeffrey C. Mack, and Lawrence C. Blaney, | |
| Defendants. | |

This matter is before the Court on Defendant Lawrence C. Blaney's Motion to Dismiss. For the following reasons, the Motion is denied.

**BACKGROUND**

Defendants Jeffrey Mack and Lawrence Blaney were officers of a now-defunct corporation, Digiliti Money Group, Inc. (Compl. (Docket No. 1) ¶ 2.) Digiliti was a financial technology company, providing small banks, credit unions, and other financial services companies with software and technology for mobile banking services. (Id. ¶ 17.) Mack was Digitili's CEO, President, and Chair of the Board of Directors. (Id. ¶ 14.) Blaney was Digitili's Executive Vice President of Sales. (Id. ¶ 15.)

The SEC alleges that Digitili fraudulently inflated its revenue in order to appear profitable, so that the company could attract outside investors. (See id. ¶ 1.) Specifically, the SEC contends that Mack and Blaney developed a scheme to offer side agreements to Digitili's biggest customer, referred to in the pleadings as Customer Number 1. These side agreements allowed the customer to cancel preexisting contracts with Digitili without any

payment or penalty. (Id. ¶¶3-4.) Because the side agreements were not disclosed, it appeared to auditors and members of the public that the customer had non-revocable contracts. Thus, Digitili recognized revenue from the contracts, even though the contracts could be, and ultimately were, cancelled. (Id. ¶ 4.)

In October 2016, Digitili attempted a public offering. Because Digitili did not achieve its revenue targets for the previous quarter, however, the public offering was unsuccessful. (Id. ¶ 31.) After this failure, Blaney communicated with the customer, attaching a new contract with a total price of nearly $400,000. The email stated that the customer could terminate the contract "without any obligation to pay or without any penalty." (Id. ¶ 32.) Blaney told Mack that he valued the contract at nearly $400,000 "to make sure we hit our number." (Id. ¶ 33.) The customer signed the contract, but the terms of the email were not disclosed in the contract or provided to Digitili's finance and accounting department. (Id. ¶ 35.) Although the customer executed the contract on October 21, 2016, Blaney dated the contract September 30, 2016, so that the contract could be included in Digitili's third-quarter revenue. (Id. ¶ 37.) Digitili's SEC forms and revenue statements included the revenue from this contract, though accounting rules prohibit a company from claiming revenue from contracts that are cancellable without payment or penalty.

After the initial offering failure, Digitili raised more than $7 million in a private placement of convertible notes in late 2016 and early 2017. (Id. ¶ 54.) Digitali provided its financial statements and SEC-required financial forms to potential investors, all of which contained the overstated revenue figures. (Id.) At the same time, Digitali was

preparing another public offering, but was nearly $1 million short of its 4th-quarter revenue targets. Blaney told Mack that Digitili would "probably need to do a similar deal [with Customer Number 1] to hit the Q4 number." (Id. ¶ 59.) Three days later, Blaney again emailed the customer, proposing a new contract worth $800,000 that could be canceled without payment or penalty. (Id. ¶ 60.) Blaney emailed proposed cancellation language to Mack, who sent it on to the customer. (Id. ¶ 62.) When the customer requested that terms in the email be included in the new contract, Blaney replied that Digitili "cannot put this in the amendment as [the auditors] wouldn't let us take any revenue which is what this is about." (Id. ¶ 66.) He assured the customer that "[a]n email is a binding agreement and you have the agreement via email from our CEO." (Id.) The customer signed the new contract, with a total price of $870,000. (Id. ¶ 67.) Again, Blaney pre-dated the contract, which was signed on January 31, 2017, to a date within the previous quarter, December 16, 2016. (Id. ¶ 70.) The contract price allowed Digitili to reach its revenue targets.

Digitili completed the public offering on March 10, 2017, and the company was listed on the Nasdaq. In April, the customer sought to cancel the October 2016 contract. Blaney asked the customer to postpone any cancellation until June, and further asked the customer not to let Digitili's finance and accounting department know about its intent to cancel the contracts. (Id. ¶¶ 92-93.) The same day, Blaney and Mack communicated about sending the customer a third contract, worth approximately $1 million, because Digitili was once again behind on its revenue targets. (Id. ¶ 94.) The customer initially declined to execute the new contract, but after Mack proposed giving the customer shares of Digitili stock, the customer agreed. (Id. ¶¶ 98-100.) The customer signed a $550,000 contract on

April 26, 2017, but Blaney again back-dated it to March 23, 2017. (Id. ¶¶ 101-02.) Digitili issued first-quarter financial statements containing the inflated revenue figures and issued press releases that falsely stated Digitili's revenue.

The customer cancelled all of its new contracts in July 2017, causing Digitili to write off more than $1.8 million. (Id. ¶ 121.) The scheme was uncovered after Digitili terminated Mack and Blaney and discovered emails related to the side agreements. (Id. ¶ 7.) Digitili was forced to re-state its financial reports and filings, and eventually went out of business. (Id. ¶¶ 124, 126.)

The Complaint contains 15 counts, all alleging either substantive or aiding-and-abetting violations of various securities laws. Blaney seeks dismissal of the counts alleging violations of § 17(a)(1)-(3) of the Securities Act of 1933 and accompanying rules, and those alleging violations of §§ 10(b) and 13(a) of the Securities Exchange Act of 1934 and accompanying rules. He does not move to dismiss three counts alleging violations of Exchange Act § 13(b)(5) and its rules.

**DISCUSSION**

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Fed. R. Civ. P. 12(b)(6). A claim bears facial plausibility when it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept plausible factual allegations as true.

Gomez v. Wells Fargo Bank, N.A., 676 F.3d 655, 660 (8th Cir. 2012).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to support a claim.  Iqbal, 556 U.S. at 678.

Blaney first argues that the Complaint is replete with "group pleading" so that he does not know how he is alleged to have participated in the fraud.  But the Complaint outlines specifically Blaney's conduct, as discussed above:  he sent multiple emails to both the customer and Mack, setting up and carrying out the alleged fraudulent scheme.  This is not group pleading.

He also complains that the Complaint is a "shotgun" pleading because the counts incorporate all of the factual allegations.  A shotgun pleading is one which is so scattershot that a defendant cannot discern what facts are connected to what cause of action.  Here, the causes of action all sound in securities fraud, so all factual averments are necessarily tied to all causes of action.  The Complaint is not a shotgun pleading.

Next, he contends that the Complaint fails to plead scienter:  "The Complaint offers no plausible suggestion that Mr. Blaney had any motive to participate in any of the alleged conduct that allegedly resulted in materially overstated revenue."  (Def.'s Supp. Mem. (Docket No. 21) at 18.)  This argument is contrary to reason and experience.  There can be no doubt that an officer of a company wants that company to go public so that his options are worth money.  In addition, Blaney received a $30,000 bonus after the IPO.  That is sufficient to establish motive and scienter for purposes of a motion to dismiss.[1]  His motion

---

[1] His contention that the Complaint fails to plead a "strong inference of scienter" is similarly without merit, as that is a requirement for pleading under the Private Securities

to dismiss the § 17(a)(1) and § 10(b) claims is denied.

A claim under § 17(a)(2) requires that the person "obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact . . ." in connection with the "offer or sale of securities." 15 U.S.C. § 77q(a)(2). Blaney contends that there is no allegation that he made any statement or omission in connection with any of the stock offerings. However, the section does not require that he actually make a statement or omission. The section requires that he receive something "by means of" a misstatement or omission. Blaney's reliance on the Supreme Court's <u>Janus</u> decision is misplaced, because <u>Janus</u> involved violations of Rule 10b-5, which applies to the "maker" of a statement. <u>Janus Capital Grp. v. First Derivative Traders</u>, 564 U.S. 135, 142 (2011). There is no such limitation in § 17(a)(2).

The question then becomes whether the Complaint sufficiently alleges that Blaney received "money or property." Blaney contends that because the Complaint does not allege that he received the $30,000 bonus, merely that he was awarded this bonus, the claim fails. That is parsing the allegations too finely. The SEC has sufficiently alleged the elements of a § 17(a)(2) claim.

Finally, Blaney contends that the SEC has insufficiently pled that he had knowledge of any securities violation as required for aiding and abetting liability. While the Complaint does not state that Blaney knew that the side agreements led to Digitili's false financial statements, such an allegation is not necessary. The Complaint alleges that Blaney made

---

Litigation Reform Act, not for actions the SEC brings.

the side deals knowing and intending that they would falsely prop up Digitili's financial results for purposes of the stock offerings. Indeed, Blaney admits as much in his emails. This is sufficient to allege knowledge for purposes of the aiding and abetting claims.

**CONCLUSION**

The Complaint sufficiently states claims on which relief can be granted. Accordingly, **IT IS HEREBY ORDERED that** Defendant Lawrence Blaney's Motion to Dismiss (Docket No. 20) is **DENIED**.

Dated: July 23, 2019

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge