## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States Securities and Exchange
Commission,

          Case No. 19-cv-918 (PAM/ECW)

      Plaintiff,

v.                **ORDER**

Jeffrey C. Mack and Lawrence C. Blaney,

      Defendants.

   This case is before the Court on Plaintiff's Motion to Deem Admitted Certain Requests to Admit the Genuineness of Documents Directed to Defendant Lawrence C. Blaney (Dkt. 145) and Defendant Lawrence C. Blaney's Motion to Compel Further Responses to Requests for Admission (Dkt. 155).

## I.  FACTUAL AND PROCEDURAL BACKGROUND

   Plaintiff United States Securities and Exchange Commission ("the SEC") filed this action alleging that Defendants violated Sections 17(a)(1)-(3) of the Securities Act, Sections 10(b) and 13(b)(5) of the Exchange Act, and Exchange Act Rules 10b-5(a)-(c) and 13b2-1. (Dkt. 1.) In particular, the SEC alleges that Defendants caused Digiliti Money Group, Inc. ("Digiliti"), a publicly traded company, to surreptitiously enter into "Side Agreements" with its largest customer that gave the customer the right to cancel four contracts without payment within specified time periods. (*Id.* ¶¶ 2-3.) Defendant Lawrence C. Blaney ("Blaney") was Digiliti's Executive Vice President of Sales during the relevant period. (*Id.* ¶ 15.) Defendant Jeffrey C. Mack ("Mack") was Digiliti's Chief

Executive Officer, President, and Chairman of the Board of Directors from Digiliti's formation until his termination in August 2017. (*Id.* ¶ 14.) The SEC alleges that Defendants caused Digiliti in various 10-Q and 10-K Forms in 2016 and 2017 to improperly recognize $1.65 million of revenue from the four contracts and that the revenue was overstated by more than 19% for the third quarter of 2016, more than 17% for the year ending December 31, 2016, and more than 24% for the first quarter of 2017. (*Id.* ¶¶ 4, 44-53, 79-88, 111-120.) Using financial statements reflecting the allegedly fraudulently overstated revenue in Forms 10-Q, in amendments to a Form S-1 registration statement, in press releases, and in a Form 8-K, Digiliti raised at least $7.7 million in a series of private placements from November 10, 2016 through January 2017 and approximately $10.5 million in a public offering of Digiliti common stock that closed on March 10, 2017. (*Id.* ¶¶ 4, 6, 42-44, 58, 89-91, 111.) The SEC further alleges that this scheme came to light only after Defendants were terminated and emails about the Side Agreements were discovered. (*Id.* ¶ 7.)

This case is presently before the Court on the parties' respective motions regarding requests for admissions.

In Plaintiff's Motion to Deem Admitted Certain Requests to Admit the Genuineness of Documents Directed to Defendant Lawrence C. Blaney (Dkt. 145), the SEC sought an order deeming admitted all requests in its First, Second, and Third Set of Requests to Admit the Genuineness of Documents to Blaney, and deeming admitted Request Nos. 1-6, 9-10, and 12 in the Fourth Set of Requests to Admit the Genuineness of Documents to Blaney.

Blaney's Motion to Compel asserts that his requests for admission to the SEC targeted mainly the contentions in the Complaint from September 1, 2016 to the present, the same period as the conduct alleged in the Complaint. (Dkt. 156 at 3-4.) As part of his Motion, Blaney asks the Court for an order requiring the SEC to amend its responses to remove improper objections: objections that the requests for admission lack specificity or are vague and ambiguous; objections relating to the fact that Blaney asserted his Fifth Amendment rights; objections as to relevance; and objections relating to requests involving Digiliti's alleged Chief Financial Officer ("CFO") Bryan Meier. (*See generally id.*)

At the hearing on the Motions, the Court, given the representations of the parties, ordered them to conduct an additional meet and confer with respect to these motions and to report back to the Court by August 19, 2020 as to what disputes remained. (Dkt. 173; Dkt. 195 at 64-70.)

On August 17, 2020, Blaney served Supplemental Responses to the Third and Fourth Sets of Requests to Admit the Genuineness of Documents Directed to Defendant Lawrence C. Blaney. (Dkts. 197-1, 197-2.)

On August 19, 2020, the parties submitted a joint letter regarding the ordered meet and confer. (Dkt. 197.) As to the SEC's Motion, disputes remain as to Request Nos. 1-17 in Plaintiff's Third Set of Requests to Admit Genuineness of Documents to Defendant Blaney (Dkt. 148-3) and Request Nos. 1-6, 9-10, and 12 in Plaintiff's Fourth Set of Requests to Admit Genuineness of Documents to Defendant Blaney (Dkt. 148-4). (Dkt. 197.)

No disputes remain with respect to First and Second Sets of Requests for Admissions (*see generally* Dkt. 195; Dkt. 197), and therefore, Plaintiff's Motion to Deem Admitted Certain Requests to Admit the Genuineness of Documents Directed to Defendant Lawrence C. Blaney as to the First and Seconds Set of Requests is denied as moot.

In addition, the parties reached no resolution with respect to Blaney's Motion to Compel. (Dkt. 197 at 4-8.)

The Court will proceed with respect to the remaining outstanding disputes in both Motions.

## II.   <u>ANALYSIS</u>

### A.   **Plaintiff's Motion to Deem Admitted Certain Requests to Admit the Genuineness of Documents**

The requests at issue in the Third and Fourth Sets of Requests for Admissions deal with Digiliti-related emails that Blaney forwarded from his Digiliti work email address lblaney@digilitimoney.com or his lblaney@cachetfinancial.com email account to his personal email address, blaneylarry@gmail.com. The requests for admissions ask Blaney to admit the genuineness not only of the emails to himself, but also the genuineness of certain emails within the email chain, as well as any attachments. (Dkts. 148-3, 148-4.) The documents at issue were attached as exhibits to the requests for admissions and were comprised of emails from Blaney forwarding other emails to himself, which in some cases included emails to which he was not a party, but were forwarded to him, and in some cases contained attachments. (*Id.*)

Initially, Blaney responded to these requests for admissions by admitting that the emails from himself to himself were emails, but otherwise asserting that the "document otherwise speaks for itself and Mr. Blaney denies any inaccurate or incomplete description or characterization of the document." (*Id.*)  As stated previously, Blaney provided supplemental responses to the requests for admissions after the hearing on the present Motions and the parties' subsequent meet and confer.  In his supplemental responses, Blaney, instead of admitting that the emails were "emails," asserted that the documents were a "genuine copy" of the email from one of his email addresses to another of his email addresses with one or more attachments (to the extent applicable).  (*Id.*)

The SEC takes issue with the supplementation, arguing that "Blaney is still admitting only that he sent something to himself.  He continues to refuse to admit the genuineness of the entire email that the SEC attached to the requests to admit genuineness of documents."  (Dkt. 197 at 1.)  The SEC objects to the fact that Blaney does not admit to the genuineness of the underlying emails he forwarded or their attachments.  (Dkt. 197 at 2.)  Blaney's response to the Government's position was as follows:

> Defendant Blaney also served amended responses to sets 3 and 4 on August 17, 2020.  In accordance with the guidance from the Court, Defendant Blaney amended every response to clarify that he admits the genuineness of the documents, but not the SEC's characterization or description of the documents, which as discussed at the August 5, 2020 hearing, are often inaccurate or incomplete.  As the Court can see from the amended responses quoted by the SEC above, Defendant Blaney has admitted that every email is genuine.  The rest of the SEC's arguments above merely rehash the same arguments made in its brief and at the hearing that Defendant Blaney should be required to adopt the SEC's chosen description of the document.  Respectfully, Defendant Blaney has no such obligation.

(Dkt. 197 at 3.)

Rule 36 of the Federal Rules of Civil Procedure Provides:

A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to:

(A)   facts, the application of law to fact, or opinions about either; and

(B)   **the genuineness of any described documents**.

Fed. R. Civ. P. 36(a)(1) (emphasis added).  "[T]he "purpose of Rule 36 is to remove uncontested issues and to prevent delay." *Am. Petro, Inc. v. Shurtleff*, 159 F.R.D. 35, 38 (D. Minn. 1994) (citation omitted); *see also Sobolik, Tr. for Sobolik v. Briggs & Stratton Corp.*, No. CV 09-1785 (JRT/RLE), 2010 WL 11640189, at *3 (D. Minn. July 2, 2010). ("The quintessential function of Requests for Admissions is to allow the narrowing of issues, to permit facilitation in presenting cases to the factfinder and, at a minimum, to provide notification as to those facts, or opinions, that remain in dispute.").

Rule 36 also provides:

On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served.  The court may defer its final decision until a pretrial conference or a specified time before trial.  Rule 37(a)(5) applies to an award of expenses.

Fed. R. Civ. P. 36(a)(6).

Here, the SEC asks in both the Third and Fourth Sets of Requests for Admissions that Blaney do the following: "You are requested to admit the genuineness of the following described and attached documents[.]"  (Dkt. 143-3; Dkt. 143-4.)  According to the SEC, the purpose of these requests is to authenticate emails and other documents that

Blaney authored or received.  (Dkt. 146 at 2.)  By its own plain language, Rule 36 "expressly provides for the use of requests for admission to obtain an admission of the authenticity of a document."  *LeMond Cycling, Inc. v. Trek Bicycle Corp.*, No. CV 08-1010 (RHK/JSM), 2009 WL 10678176, at *2 (D. Minn. Nov. 30, 2009) (citing Fed. R. Civ. P. 36(a)(1)(B)).

The authentication requirement for admissible documents is satisfied if the proponent produces evidence "sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  "To authenticate a document, the proponent need only prove a rational basis for the claim that the document is what the proponent asserts it to be."  *United States v. Long*, 857 F.2d 436, 442 (8th Cir. 1988) (citations omitted).  The authentication requirement of Fed. R. Evid. 901 is satisfied when a party or their counsel concede the genuineness of a document.  *See Resolution Tr. Corp. v. Eason*, 17 F.3d 1126, 1131 (8th Cir. 1994) ("First, RTC's authentication objection lacks merit.  Counsel for RTC conceded the genuineness of these two exhibits, satisfying the authentication requirement of Fed. R. Evid. 901.").

Given Blaney's supplemental responses that the emails he forwarded between his email accounts and attachments are genuine, the Court concludes that he has admitted to the authenticity of the emails and attachments for the purposes of Rule 901.  While he does not specifically admit to the authenticity of some of the underlying emails in the email chains he forwarded in several of the Requests for which the SEC seeks authentication (*see*, *e.g.*, Dkt. 197-1, Request Nos. 1-17; Dkt. 197-2, Request Nos. 1, 4, 5, 6, ), the Court concludes that by admitting the authenticity of the emails Blaney

forwarded to himself, that authentication extends to any underlying emails in the same chain for which the SEC specifically seeks authentication.  The Court makes this finding given Blaney's authentication of the entire email chain and on the fact that Blaney was a recipient or sender of the majority of the underlying emails in the chains at issue. Further, had Blaney sought to challenge the authentication of emails or legitimately could not make a valid determination as to their authenticity, then he should have so stated. Hiding behind the statement that a document speaks for itself is not a valid objection for the purposes of requests for admissions, as it evades the actual request, which pertains to the genuineness of the described documents, and does not state in detail why  Blaney could not truthfully admit or deny the request.  *See Simmons v. JP Morgan Chase Bank, N.A.*, No. 8:10-CV-00178-LSC, 2010 WL 4273177, at *3-4 (D. Neb. Oct. 21, 2010); *see also Iron Workers Local No. 60 Annuity Pension Fund v. Solvay Iron Works, Inc.*, No. 515CV0054BKSDEP, 2017 WL 1458772, at *4 (N.D.N.Y. Apr. 24, 2017); *Little Hocking Water Ass'n, Inc. v. E.I. Du Pont de Nemours & Co.*, No. 09-CV-1081, 2013 WL 1791083, at *6 (S.D. Ohio Apr. 26, 2013) ("This Court had concluded—as have other courts—that it is generally impermissible to merely state, in response to a request to admit, that a document 'speaks for itself.'") (citations omitted); *FDIC v. Halpern*, 271 F.R.D. 191, 195 (D. Nev. 2010) (concluding that the FDIC's responses that reference documents "contain[ing] language consistent with the requested proposition . . . speak for themselves . . . are . . . evasive because they do not fairly respond to the substance of the matters that Defendants request to be admitted").

To the extent that it is Blaney's position that he should not have to admit emails

not authored by him in the email chain he forwarded, the Court rejects any such assertion. Being asked to admit the authenticity of documents a party did not author does not necessarily provide a basis for refusing to admit authenticity, especially since Blaney in many cases was a recipient of the emails at issue.  Again, the Court makes this ruling based on Rule 36's requirement that the responding party make a reasonable inquiry and because Blaney has not stated that he cannot admit or deny the Requests at issue.  *See Iron Workers Local No. 60 Annuity Pension Fund*, 2017 WL 1458772, at *4 ("The fact that they are being asked to admit the authenticity of documents they did not author does not necessarily provide a basis for refusing to admit authenticity because Rule 36 requires the responding party to make a reasonable inquiry, a reasonable effort, to secure information that is readily obtainable from persons and documents within the responding party's relative control to state fully those efforts.") (quotation marks and citation omitted).

Therefore, the Court concludes that to the extent that the SEC specifically seeks authentication of emails included in the emails Blaney forwarded to himself and the related attachments, the authenticity of those emails and attachments as part of the Third and Fourth Sets of Requests for Admissions is also deemed admitted.  However, this ruling does not go to what any of these documents ultimately stand for or mean, as that is an issue ultimately reserved to the factfinder to the extent that the documents are admitted into evidence in this matter.  This ruling **<u>only</u>** extends to authentication.

### B.    <u>Blaney's Motion to Compel Further Responses to Requests for Admission</u>

As set forth previously, the thrust of Blaney's Motion to Compel is a request for

an order requiring the SEC to amend its Responses to remove objections, specifically objections that the requests lack specificity or are vague and ambiguous; objections relating to the fact that Blaney asserted his Fifth Amendment rights; objections as to relevance; and objections relating to requests involving alleged Digiliti CFO Meier. (Dkt. 156 at 10-24.)

### 1. Request Nos. 3-5, 11-14, 16-24, 26, and 37

Save for the majority of Blaney's requests for admissions pertaining to Meier, the SEC not only asserted objections as to Request Nos. 3-5, 11-14, 16-24, 26, and 37, but also denied each of these requests.  (Dkt. 157-2 at 4-14, 18.)

At the hearing, counsel for the SEC represented that even if the Court were to strike its objections, including those related to privilege, its denials of the requests would remain unchanged:

> THE COURT: Okay. I have a bigger-picture question for the SEC.  Would your responses to any of these requests for admission change if I overruled all of your objections?
>
> MS. HUTTON: Your Honor, we have looked at them, and, no.
>
> THE COURT: Okay.
>
> MS. HUTTON: Our -- no, our denials would not change.
>
> THE COURT: Okay.  And I do want to also double-check, are you withholding any information or would your responses change if the objections based on the privileges was overruled?
>
> MS. HUTTON: They would not change.

(Dkt. 195 at 58-59.)

The Court must accept the SEC's representations as to its denial of Request Nos.

3-5, 11-14, 16-24, 26, and 37 at face value. *See Marquette Bus. Credit, Inc. v. Gleason*, No. 14-CV-354 (MJD/LIB), 2015 WL 12776599, at *6 (D. Minn. Jan. 30, 2015) (quoting *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 168 F.R.D. 641, 643 n.1 (D. Minn. 1996)) ("[T]he Court cannot compel a 'different' answer, simply because Plaintiff is unsatisfied with Gleason's denials.  The Court must accept Gleason's representations at face value, as the Court 'ha[s] no means to test the veracity of such avowals, other than to appropriately sanction a recalcitrant party for failing to responsibly honor its discovery obligations.'")  While Blaney seeks a "clean admission or a clean denial" (Dkt. 195 at 53), the Court finds no meaningful distinction based on the asserted objections given the SEC's representations at the hearing that its denials would not change even if this Court were to strike the objections.

For these reasons, the Court denies Blaney's Motion to Compel with respect to Request Nos. 3-5, 11-14, 16-24, 26, and 37.

### 2.      Request Nos. 29-36: Request for Admissions Related to Meier

As his motion pertains to requests for admission regarding Meier, Blaney argues that the SEC's objection that Meier is not a defendant in this case is not a proper objection, as the SEC conducted an investigation that included obtaining sworn testimony from several witnesses, including Meier, as well as the collection of over 7.5 million documents, which led the SEC to file a Complaint, thereby allowing the SEC to admit or deny the facts relating to its claims based on what it learned during the investigation. (Dkt. 156 at 18.)  According to Blaney, if the SEC does not know because it did not seek to learn these facts, or tried but was unsuccessful, it can respond and include that

qualification, but it is not excused from responding altogether just because the facts relate to someone or something that is not a defendant or "an employee or agent of the SEC or otherwise under its control."  (*Id.*)

The SEC argues that Blaney's requests regarding Meier reflect Blaney's confusion about both the SEC's claims against him and how financial statements are made, as the SEC alleges that Blaney deliberately concealed the existence of Side Agreements, which in turn caused Digiliti to fool the investing public with phony revenue figures, making the requests irrelevant.  (Dkt. 164 at 4-7.)  The SEC also asserts that because the interests of Meier as a third party, who is not under its control, do not align with the SEC and deal with disputed issues regarding Blaney's alleged actions, the SEC has no obligation to answer the Meier requests, especially where Blaney essentially asks the SEC to admit facts that Meier never admitted.  (*Id.* at 7-12.)

The relevant requests for admissions and the SEC's responses are as follows:

29.    Admit that, as Chief Financial Officer, MEIER's duties included supervising the revenue recognition process at DIGILITI.

**RESPONSE**: The SEC objects to "supervising the revenue recognition process" as vague and ambiguous in this request.  The SEC also objects because this request lacks specificity.  The SEC objects to this request as being beyond the scope of discovery pursuant to Federal Rule of Civil Procedure 26(b)(1) in that it is not relevant to the SEC's claims or Blaney's defenses.  Mr. Meier is not a defendant in this lawsuit.  The SEC objects to the extent that it seeks information protected by the attorney-client privilege, law enforcement privilege, deliberative process privilege, and/or work product privilege.  The SEC objects because this request seeks an admission regarding Mr. Meier "supervising the revenue recognition process," which is vague and ambiguous and if answerable would be within Mr. Meier's personal knowledge, not the SEC's.  Mr. Meier is not an employee or agent of the SEC or otherwise under its control.  After reasonable inquiry, the SEC lacks sufficient information to enable it to

admit or deny.

30.    Admit that MEIER's duties included supervising the creation of DIGILITI's financial statements.

**RESPONSE**: The SEC objects to "supervising the creation of Digiliti's financial statements" as vague and ambiguous in this request. The SEC also objects because this request lacks specificity.  The SEC objects to this request as being beyond the scope of discovery pursuant to Federal Rule of Civil Procedure 26(b)(1) in that it is not relevant to the SEC's claims or Blaney's defenses.  Mr. Meier is not a defendant in this lawsuit.  The SEC objects to the extent that it seeks information protected by the attorney-client privilege, law enforcement privilege, deliberative process privilege, and/or work product privilege.  The SEC objects because this request seeks an admission regarding Mr. Meier "supervising the creation of Digiliti's financial statements," which is vague and ambiguous and if answerable would be within Mr. Meier's personal knowledge, not the SEC's.  Mr. Meier is not an employee or agent of the SEC or otherwise under its control.  After reasonable inquiry, the SEC lacks sufficient information to enable it to admit or deny.

31.    Admit that MEIER's duties included reviewing DIGILITI's financial statements.

**RESPONSE**: The SEC objects to "reviewing DIGILITI's financial statements" as vague and ambiguous in this request. The SEC also objects because this request lacks specificity.  The SEC objects to this request as being beyond the scope of discovery pursuant to Federal Rule of Civil Procedure 26(b)(1) in that it is not relevant to the SEC's claims or Blaney's defenses.  Mr. Meier is not a defendant in this lawsuit.  Mr. Meier is not a defendant in this lawsuit.  [sic]  The SEC objects to the extent that it seeks information protected by the attorney-client privilege, law enforcement privilege, deliberative process privilege, and/or work product privilege. The SEC objects because this request seeks an admission regarding Mr. Meier "reviewing DIGILITI's financial statements" which is vague and ambiguous and if answerable would be within Mr. Meier's personal knowledge, not the SEC's.  Mr. Meier is not an employee or agent of the SEC or otherwise under its control.  After reasonable inquiry, the SEC lacks sufficient information to enable it to admit or deny.

32.    Admit that MEIER approved DIGILITI's financial statements.

**RESPONSE**: The SEC objects to "approved DIGILITI's financial

statements" as vague and ambiguous in this request.  The SEC also objects because this request lacks specificity.  The SEC objects to this request as being beyond the scope of discovery pursuant to Federal Rule of Civil Procedure 26(b)(1) in that it is not relevant to the SEC's claims or Blaney's defenses.  Mr. Meier is not a defendant in this lawsuit.  The SEC objects to the extent that it seeks information protected by the attorney-client privilege, law enforcement privilege, deliberative process privilege, and/or work product privilege.  The SEC objects because this request seeks an admission regarding Mr. Meier having "approved DIGILITI's financial statements" which is vague and ambiguous and if answerable would be within Mr. Meier's personal knowledge, not the SEC's.  Mr. Meier is not an employee or agent of the SEC or otherwise under its control.  After reasonable inquiry, the SEC lacks sufficient information to enable it to admit or deny.

33.    Admit that MEIER disseminated DIGILITI's financial statements.

**RESPONSE**: The SEC objects to "disseminated DIGILITI's financial statements" as vague and ambiguous in this request. The SEC also objects because this request lacks specificity.  The SEC objects to this request as being beyond the scope of discovery pursuant to Federal Rule of Civil Procedure 26(b)(1) in that it is not relevant to the SEC's claims or Blaney's defenses.  Mr. Meier is not a defendant in this lawsuit.  The SEC objects to the extent that it seeks information protected by the attorney-client privilege, law enforcement privilege, deliberative process privilege, and/or work product privilege.  The SEC objects because this request seeks an admission regarding Mr. Meier having "disseminated Digiliti's financial statements" which is vague and ambiguous and if answerable would be within Mr. Meier's personal knowledge, not the SEC's.  Mr. Meier is not an employee or agent of the SEC or otherwise under its control.  After reasonable inquiry, the SEC lacks sufficient information to enable it to admit or deny.

34.    Admit that MEIER reviewed DIGILITI's public SEC filings.

**RESPONSE**: The SEC objects to "reviewed DIGILITI's public SEC filings" as vague and ambiguous in this request.  The SEC also objects because this request lacks specificity.  The SEC objects to this request as being beyond the scope of discovery pursuant to Federal Rule of Civil Procedure 26(b)(1) in that it is not relevant to the SEC's claims or Blaney's defenses.  Mr. Meier is not a defendant in this lawsuit.  The SEC objects to the extent that it seeks information protected by the attorney-client privilege, law enforcement privilege, deliberative process privilege, and/or

work product privilege.  The SEC objects because this request seeks an admission regarding Mr. Meier having "reviewed Digiliti's public SEC filings" which is vague and ambiguous and if answerable would be within Mr. Meier's personal knowledge, not the SEC's.  Mr. Meier is not an employee or agent of the SEC or otherwise under its control.  After reasonable inquiry, the SEC lacks sufficient information to enable it to admit or deny.

35.    Admit that MEIER approved DIGILITI's public SEC filings.

**RESPONSE**: The SEC objects to "approved DIGILITI's public SEC filings" as vague and ambiguous in this request.  The SEC also objects because this request lacks specificity.  The SEC objects to this request as being beyond the scope of discovery pursuant to Federal Rule of Civil Procedure 26(b)(1) in that it is not relevant to the SEC's claims or Blaney's defenses.  Mr. Meier is not a defendant in this lawsuit.  The SEC objects to the extent that it seeks information protected by the attorney-client privilege, law enforcement privilege, deliberative process privilege, and/or work product privilege.  The SEC objects because this request seeks an admission regarding Mr. Meier having "approved Digiliti's public SEC filings" which is vague and ambiguous and if answerable would be within Mr. Meier's personal knowledge, not the SEC's.  Mr. Meier is not an employee or agent of the SEC or otherwise under its control.  After reasonable inquiry, the SEC lacks sufficient information to enable it to admit or deny.

36.    Admit that MEIER disseminated DIGILITI's public SEC filings.

**RESPONSE**: The SEC objects to "disseminated DIGILITI's public SEC filings" as vague and ambiguous in this request.  The SEC also objects because this request lacks specificity.  The SEC objects to this request as being beyond the scope of discovery pursuant to Federal Rule of Civil Procedure 26(b)(1) in that it is not relevant to the SEC's claims or Blaney's defenses.  Mr. Meier is not a defendant in this lawsuit.  The SEC objects to the extent that it seeks information protected by the attorney-client privilege, law enforcement privilege, deliberative process privilege, and/or work product privilege.  The SEC objects because this request seeks an admission regarding Mr. Meier having "disseminated DIGILITI's public SEC filings" which is vague and ambiguous and if answerable would be within Mr. Meier's personal knowledge, not the SEC's.  Mr. Meier is not an employee or agent of the SEC or otherwise under its control.  After reasonable inquiry, the SEC lacks sufficient information to enable it to admit or deny.

(Dkt. 157-2 at 4, 11 (emphasis in original).)

As set forth previously, this case relates to allegations of falsification of revenue by Defendants, which included their alleged false statements regarding revenues to the investing public via 10-Q and 10-K Forms and S-1 submissions. The SEC is correct that the Requests relating to Meier are the "flip side of the same coin" (Dkt. 164 at 2) to the requests for admissions relating to Blaney's conduct that the SEC alleges violated the Securities Act, the Exchange Act, and Exchange Act Rules, as set forth in the table below:

| Meier Requests at Issue | Corresponding Blaney Request Denied by the SEC |
|---|---|
| 29. Admit that, as Chief Financial Officer, MEIER's duties included supervising the revenue recognition process at DIGILITI. | 8. Admit that YOU do not have any DOCUMENTS in YOUR possession, custody, or control that support the allegation that BLANEY had a role in the revenue recognition process at DIGILITI. |
| 30. Admit that MEIER's duties included supervising the creation of DIGILITI's financial statements | 11. Admit that BLANEY did not create DIGILITI's financial statements. |
| 31. Admit that MEIER's duties included reviewing DIGILITI's financial statements. | 12. Admit that BLANEY did not review DIGILITI's financial statements. |
| 32. Admit that MEIER approved DIGILITI's financial statements. | 13. Admit that BLANEY did not approve DIGILITI's financial statements. |
| 33. Admit that MEIER disseminated DIGILITI's financial statements. | 14. Admit that BLANEY did not disseminate DIGILITI's financial statements. |
| 34. Admit that MEIER reviewed DIGILITI's public SEC filings. | 22. Admit that BLANEY did not review DIGILITI's public SEC filings. |
| 35. Admit that MEIER approved DIGILITI's public SEC filings. | 23. Admit that BLANEY did not approve DIGILITI's public SEC filings. |
| 36. Admit that MEIER disseminated DIGILITI's public SEC filings. | 24. Admit that BLANEY did not disseminate DIGILITI's public SEC filings. |

(*See* Dkt. 157-1.)

These requests go to the core issues in this matter in that Blaney appears (as part of his defense) to be attempting to elicit admissions that could theoretically take the fault of the alleged illegal activities at issue and place it at the feet of Meier.  In that sense, the requests for admission are relevant under Rule 26, which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."  Fed. R. Civ. P. 26(b)(1). However, "requests for admission are not to be employed as a means 'to establish facts which are obviously in dispute or to answer questions of law.'"  *Bos. Sci. Scimed, Inc. v. ev3, Inc.*, No. CV 05-651 (JNE/JSM), 2007 WL 9734949, at *6 (D. Minn. June 15, 2007) (quoting *Lakehead Pipe Line Co., Inc. v. American Home Assurance Co.*, 177 F.R.D. 454, 458 (D. Minn. 1997), quoting *Kosta v. Connolly*, 709 F. Supp. 592, 594 (E.D. Pa. 1989)); *see also InCompass IT, Inc. v. Dell Inc*., No. CV 11-0629 (PJS/JJG), 2012 WL 13027072, at *3 (D. Minn. June 29, 2012) ("However, requests for admission are not to be employed as a means to establish facts which are obviously in dispute or to answer questions of law.") (quotation marks and citations omitted).

Further, under Rule 36, "'a party "may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny."'"  *Orbital ATK, Inc. v. Heckler & Koch GmbH*, No. CV 17-250 (DSD/FLN), 2018 WL 1353231, at *3 (D. Minn. Jan. 11, 2018) (quoting *Activated Carbon-Based Hunting Clothing Mktg. & Sales Practices Litig.*, No. 09-MD-2059

(RHK/JJK), 2009 WL 10659390, at *3 (D. Minn. Sept. 22, 2009)., quoting Fed. R. Civ. P. 36(a)(4)).  "A '*[r]easonable inquiry* is limited to persons and documents within the responding party's control . . . .'"  *Petro v. Jones*, No. CIV. 11-151-GFVT, 2014 WL 970113, at *3 (E.D. Ky. Mar. 12, 2014) (citation omitted).  In addition, Rule 36 does not require a party to provide with specificity what steps it has taken in conducting its reasonable inquiry.  *See Orbital ATK, Inc.,* 2018 WL 1353231, at *3.

While Blaney argues that the "SEC already has obtained the necessary documents and information from Mr. Meier, Digiliti and others and must review these materials already in its possession to respond to the Requests" (Dkt. 156 at 19), the SEC, by virtue of its assertion that it has conducted a "reasonable inquiry," has met its obligations under Rule 36.  In his supporting memorandum, Blaney pointed to the testimony of Meier as evidence that would allow the SEC to admit the requests at issue without identifying the portions of his testimony that would give the SEC the ability to admit or deny the various requests.  (*Id.* at 18.)  However, during the hearing, Blaney's counsel admitted that there was nothing in the record where Meier had provided "clear testimony" as to the topics addressed by the requests for admissions at issue.  (Dkt. No. 195 at 49.)

In a post-hearing meet and confer letter, Blaney provided the following example that he claims would allow the SEC to admit or deny Request No. 35:

> Defendant Blaney's counsel directed the SEC to some of the specific portions of Mr. Meier's testimony where he had, in fact, testified as to these very facts.

> As but just one example, when discussing Digiliti's Forms 10-Q and 10-K, Mr. Meier testified as follows:

Mr. Heston: You approved the, then you approved the reports that were filed with the SEC?

Mr. Meier: Yes.

(Dkt. 197 at 4-5.)

However, the SEC accused Blaney of failing to provide the Court with the entire relevant portion of Meier's testimony:

The fuller quote from what was cited by Blaney is:

Q. Who filed the reports with the SEC? Forms 10-K, 10-Q?

A. Do you mean, did we use a third-party, M2, M2, I can't remember, they changed their name, but it's M2. That's who, who had garaged that for us.

Q Okay, who was in charge of filing those reports with the SEC?

A It was my responsibility, but it was the SEC manager who kind of, we, I said, okay, looks good, and he would call down and say file.

Q You approved the, then you approved the reports that were filed with the SEC?

A Yes.

(Dkt. 197 at 7.)

The SEC contends that the Meier testimony quoted by Blaney was limited to 10-Ks and 10-Qs and was in the context of Meier giving approval to Digiliti's SEC manager to file the 10-Qs and 10-Ks. The SEC noted that "public SEC filings" in Request 35 was not defined nor limited to certain filings nor limited to only 10-Ks or 10-Qs. (*Id.*) The SEC also noted that Blaney ignored additional testimony where Meier testified that he did not file a Form 10-Q or 10-K without Lurie or Mack's approval. (*Id.* at 6.)

Courts within this District have rejected requiring a party to comb through testimony transcripts to determine whether they can admit or deny a request for admission:

> [T]he form of these requests attempts to apprehend whether Defendants agree or disagree that, in fact, the doctors stated certain things in their depositions.  These types of requests are appropriate when the request "quotes directly from a document, and asks the opposing party to admit that the documents contain those statements." *Guinan*, 2008 WL 938874, at *5.  However, it is impossible for the Court to ascertain whether the requests quote directly from the depositions.  Plaintiffs have not submitted to the Court any deposition transcript or provided any line or page reference to such depositions on which the Court could rely to evaluate whether Defendants' responses were inappropriate.  Nor did Plaintiff provide such reference to Defendants; Defendants were thus left with the task of searching the transcripts to uncover any quoted material.  Under such circumstances, it would be unduly burdensome for a responding party to comb a deposition transcript to provide agreement or disagreement with the proposition that the deponent indeed made the statements alleged.  There is a lesser burden on the requesting party to so identify any quoted material.  In fact, the requesting party has the incentive that providing accurate referencing information to the opposing party could further expedite pretrial matters, a goal which must be the very purpose of propounding requests for admissions.

*Kaplan v. Mayo Clinic*, No. CV 07-3630 (JRT/JJK), 2008 WL 11327401, at *4 (D. Minn. Nov. 7, 2008).  Along the same lines, "a party cannot be forced to admit or deny facts testified to by a third party witness as to which the responding party has no personal knowledge." *U.S. ex rel. Englund v. Los Angeles Cty.*, 235 F.R.D. 675, 685 (E.D. Cal. 2006) (citations omitted); *see also T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co.*, 174 F.R.D. 38, 46 (S.D.N.Y. 1997) ("Here, too, I must agree with Oppenheimer's position.  Simply because a former Bank employee testifies at his deposition about what he believed at some time in the past, Oppenheimer need not admit to that person's state

of mind, particularly when it views the witness as having interests adverse to it.  Indeed, I
do not believe that requests of this nature in any way serve the goals of Rule 36.").  While
Blaney could propound requests that ask the SEC to admit that Meier testified as to a
specific portion of his testimony, the current requests ask the SEC to interpret not only
Blaney's vague requests, but also to interpret how a non-party's testimony—not under its
control—bears on issues in dispute between the parties.  This is not the proper role of
requests for admissions under Rule 36.

For all of these reasons, the Court denies Blaney's motion to compel.

### III.   ORDER

Based on the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1.   Plaintiff's Motion to Deem Admitted Certain Requests to Admit the
   Genuineness of Documents Directed to Defendant Lawrence C. Blaney
   (Dkt. 145) is **DENIED** in part as moot with respect to the First and Second
   Requests for Admissions and **GRANTED** to the extent consistent with
   Section II.A of this Order.

2.   Defendant Lawrence C. Blaney's Motion to Compel Further Responses to
   Requests for Admission (Dkt. 155) is **DENIED**.


DATED: October 23, 2020                    *s/Elizabeth Cowan Wright*
                                           ELIZABETH COWAN WRIGHT
                                           United States Magistrate Judge